(C.D. 2231)

Textile Printing & Finishing Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided January 17, 1961)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*George S. Leonard*, Acting Assistant Attorney General (*Henry J. O'Neill*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff imported a screen printing machine. The collector of customs classified the apparatus as textile printing machinery and assessed duty thereon at the rate of 20 per centum ad valorem as provided in paragraph 372 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 372), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Plaintiff relies upon the claim in its protest that the merchandise should be classified as articles having as an essential feature an electrical element or device in paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and dutiable at the rate of 13¾ per centum ad valorem.

The pertinent text of the statutes above referred to is here set forth—

Paragraph 372, as modified, *supra*:

Textile machinery, finished or unfinished, not specially provided for (except looms and machinery for making synthetic textile filaments, bands, strips, or sheets) :

   *     *     *     *     *     *     *

    Bleaching, printing, dyeing, or finishing_____ 20% ad val.
    Other * * *

Paragraph 353, as modified, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    Batteries_____ * * *

   *     *     *     *     *     *     *

    Other * * *                          13¾% ad val.

Two witnesses testified in the case, both of whom were called by plaintiff.

Aubrey L. Hanford, Jr., testified in substance that, since 1938, he had been president of the Textile Printing & Finishing Co., Inc., the plaintiff herein; that the only use for the imported machine is in "the screen printing operation." In describing this operation, he explained that ordinarily the printing is done on tables "of the normal height and wide enough and long enough, in most cases, to handle the entire length of the unit to be printed."

Using the table as the bed upon which to operate, the printing is done with a screen resembling a shallow box, upon the bottom of which a sheer dacron fabric has been stretched. Onto this fabric patterns or designs are either painted or photographed, leaving only the portion to be printed exposed and left open—the remainder being blocked out by one method or another.

To complete the process, as described by the witness—

The screen is then placed upon this table or bed, and a squeegee, the entire width of the screen to act as a dam for inks or colors which will be poured behind the paddle until it is ready to be printed, and then this squeegee is used to push the color or paint across the fabric to print the object upon the item to be printed, and then moved to the next position which is pre-determined by registration devices on the table, which is anywhere from 50 to 80 yards in length, and that is repeated for every color.

Although Hanford's description was stated to be the hand screen printing process, the witness added that the process was similarly performed automatically by the imported machine.

Hanford testified that a number of electric motors and electric switches are employed by the machine in issue in the performance of its screen printing operation, among which are a motor which unrolls the bolts of material, electric motor-driven gears to propel the squeegees across the material being printed, a motor to raise the screens, and another to lower the screens into place.

The witness stated that upon completion of the screen printing process the printed textile material is not ready for use. It must be steamed for an hour, acid-aged to fix the dyes, subjected to a washing operation which causes the material to become distorted, and a stretching operation to place the material in a condition acceptable to the trade. The screen printed bolts of material in their finished condition are used for a variety of purposes, such as the manufacture of dresses, bathing suits, flags, table covers, handkerchiefs, and upholstery material. The machine operates upon full length material only, generally bolts up to 500 yards in length, and not upon individual articles, sometimes referred to as textile piece goods—towels, napkins, and so forth. The instant screen printing machine has also been used experimentally on certain vinyl fabrics and for printing wallpaper, for which it is said to be commercially adaptable.

An advertising folder, bearing the name of "Fritz Buser Ingineering Works, Wiler, E.B.T. Switzerland," contains a picture of the machine, together with descriptive matter, which was received in evidence as plaintiff's illustrative exhibit 1.

Plaintiff's second witness, Douglas Hardy, testified that he was associated with Jungfrau, Inc., who imported the machine in controversy as agent for the Swiss manufacturers, known as the Fritz Buser Ingineering Works, and that he sold the imported machine to Hanford's concern. He stated that the machine was first developed in 1947—there being but 14 such machines in the United States today. Hardy testified further that the machine was built according to specifications, stating that "Mr. Hanford, being a textile man, we built for him a textile machine. If we are building a machine for a paper printing man, we would so specify in the contract as a paper machine, all of the elements in the machine, all of the elements being the same." Up to this time, Hardy stated that "we also have a wallpaper printing plant and we have experimentally printed wallpaper on these fabrics" and expressed the opinion that it would be commercially practical to use the machine for wallpaper printing.

In support of its contention that the machine above described is not a textile machine in the tariff sense, plaintiff relies upon the decision of this court in *Graemiger Bros., Inc.* v. *United States*, 12 Cust. Ct. 48, C.D. 829, wherein the court was concerned with the classification for dutiable purposes of a scallop-cutting machine, which was commonly used to cut two sides of handkerchiefs in the piece along the embroidered and scalloped edges thereof. In our opinion in that case, we referred to the testimony of a witness who had 40 years' experience with the machine there in controversy. He testified that "cotton cloth, which has been bleached, finished, and mercerized, is then embroidered into the form or shape of scalloped handkerchiefs in the piece. In that condition the cloth is fed into a machine like the one before us, which cuts the handkerchiefs on two of the embroidered or scalloped edges." It was the opinion of the court, in that case, that when handkerchiefs with scalloped edges were embroidered on the cloth, that which was formerly textile material ceased to exist as such and became handkerchiefs in the piece. In other words, cloth which had been completely finished as textile material and was available for a variety of uses, was, by further manufacturing processes, dedicated to a single use—handkerchiefs.

The court concluded, in said *Graemiger* case, that the scallop-cutting machines were not within the provisions of paragraph 372 of the Tariff Act of 1930, for "all other textile machinery, finished or unfinished, not specially provided for," and, accordingly, overruled the claim of the importer to that effect.

In the *Graemiger* case, the machine performed a scallop-cutting operation on commercial articles, namely, handkerchiefs in running lengths. The screen printing machine here in controversy, however, operates on full length material only, generally bolts up to 500 yards, which material is not dedicated to a single use but is used as material for the ultimate manufacture of a wide variety of articles.

It is obvious from the foregoing that the factual setup in the *Graemiger* case is readily distinguishable from the record here presented and that the *Graemiger* case cannot be deemed controlling of the instant controversy.

In further support of its contention, plaintiff invites our attention to the trade agreement with the United Kingdom, 74 Treas. Dec. 253, T.D. 49753, with specific reference to certain portions of that agreement dealing with textile machinery for textile manufacturing or processing prior to the making of fabrics and for textile machinery, not specially provided for, with certain specified exceptions.

Plaintiff then refers, in its brief, to the decision of our appellate court in *Brandon Corporation* v. *United States*, 31 C.C.P.A. (Customs) 149, C.A.D. 266, wherein the language of the trade agreement of the United Kingdom was interpreted. The court, in that case, held that certain looms and parts thereof used to weave paper-maker's fabric, dryer felts or mats, from cotton and asbestos yarn, were properly subject to classification within the provision for "all other textile machinery, finished or unfinished, not specially provided for," in paragraph 372 of the basic Tariff Act of 1930, rather than within the provision for "Textile machinery * * * for textile manufacturing or processing prior to the making of fabrics * * *" in said paragraph 372, as modified by the trade agreement with the United Kingdom.

In arriving at its conclusion in the *Brandon* case, our appellate court construed the pertinent provisions of the trade agreement with the United Kingdom there involved. Inasmuch as the first textile machinery provision of the United Kingdom Trade Agreement was limited to machinery for textile manufacturing or processing "prior to the making of fabrics," the looms and parts thereof in issue were obviously excluded therefrom. And, by specific exclusionary language of the second textile machinery provision of the United Kingdom modification, looms, among other devices, were excepted, resulting, as stated above, in classification of the controverted importation within the purview of the basic tariff act.

In the present instance, however, we are governed by the General Agreement on Tariffs and Trade, *supra*, rather than by the trade agreement with the United Kingdom, *supra*. In the modification applicable to the screen printing machine before the court, the textile printing provision of paragraph 372, which was the basis of the collector's classification, was not limited, as was the first textile

machinery provision contained in the trade agreement with the United Kingdom, by the language of "textile manufacturing or processing prior to the making of fabrics," but supplemented the broad language of "Textile machinery, finished or unfinished, not specially provided for (except looms and machinery for making synthetic textile filaments, bands, strips, or sheets)."

Confronted as we are with different modifications of tariff act provisions, the decision of our appellate court in the *Brandon* case is clearly distinguishable.

Other cases cited by plaintiff in its brief have been examined, but we find it unnecessary to discuss them.

The Government seeks to defend the collector's classification of the imported machine by reliance upon the following cases—

*United States* v. *Schenkers, Inc.*, 17 C.C.P.A. (Customs) 231, T.D. 43669—unengraved copper rollers intended when finished to be used in printing or stamping designs on silk cloth, held properly classifiable as unfinished parts of textile machinery.

*United States* v. *Sussex Print Works*, 17 C.C.P.A. (Customs) 257, T.D. 43686—involving two kinds of copper print rollers for use in printing silk. The finished print roller there in issue was held to be classifiable within the *eo nomine* provision therefor in paragraph 396 of the Tariff Act of 1922, the court holding that said provision was more specific than the provision for "all other textile machinery or parts thereof, finished or unfinished, not specially provided for," in paragraph 372. As to the textile print roller ready for engraving, but in its imported condition an unfinished roller, the court held it to be classifiable within the provision for textile machinery and parts thereof in paragraph 372 of the Tariff Act of 1922, since there was no provision in paragraph 396 of said act for unfinished rollers or for parts, finished or unfinished.

In *United States* v. *Asten Hill Mfg. Co.*, 25 C.C.P.A. (Customs) 123, T.D. 49243—looms and parts of looms for use in the weaving of heavy fabric belts, held properly classifiable as "all other textile machinery."

Based upon the testimony of plaintiff's two witnesses, together with the exhibits in evidence, it appears that the record corroborates rather than negates the action of the collector of customs in classifying the screen printing machine in issue as textile printing machinery in paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*.

Granting *arguendo*, without deciding, that the imported screen printing machine in addition to being textile manufacturing machinery in said paragraph 372, as modified, *supra*, is also within the purview of the provision for articles having as an essential feature an electrical element or device in paragraph 353 of said act, as modified by the

Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*, the provision for textile manufacturing machinery in said paragraph 372 would prevail on the principle of relative specificity. In the case of *Julius Forstmann & Co.* v. *United States*, 28 C.C.P.A. (Customs) 222, C.A.D. 149, our appellate court, when confronted with this question of law, relied upon the rule of construction that a classification by use prevails over a general classification and even an *eo nomine* designation, in the absence of clear congressional intent to the contrary. Accordingly, the court sustained the trial court in holding that certain wet decatizing machines, double nap raising machines, and cloth tenterizing machines were properly subject to classification as textile machinery in paragraph 372 of the Tariff Act of 1930, rather than within the electrical articles provisions of paragraph 353 of said act.

On the record presented in this case and for the foregoing reasons, we hold that the screen printing machine in issue was properly classified by the collector of customs as textile machinery within the purview of paragraph 372 of the tariff act, as modified by the General Agreement on Tariffs and Trade, *supra*. The protest is, therefore, overruled in all respects and judgment will issue accordingly.